Stroble *v.* The City of New Albany.

No. 17,534.

STROBLE *v.* THE CITY OF NEW ALBANY.

PRACTICE.—*Motion for Direction of Verdict.—Insufficiency of Evidence.*—The proper practice for a defendant, who is of the opinion that plaintiff's evidence makes no case, is not to move to withdraw the case from the jury, but to ask for direction of a verdict.

SAME.—*Taking Case from Jury.—Question of Negligence in Dispute.*—An action for injuries occasioned by a defective bridge should not be taken from the jury, where both the questions of negligence and contributory negligence are left in dispute.

From the Clark Circuit Court.

*M. Z. Stannard, C. L. Jewett* and *H. E. Jewett,* for appellant.

*G. H. Voight* and *E. B. Stotsenburg,* for appellee.

HOWARD, J.—This was an action brought by appellant for injuries occasioned by a defective bridge maintained by appellee upon a public street of said city.

After the cause had been submitted to a jury and the evidence of appellant heard, the appellee moved the court "to withdraw the cause from the jury and find for the defendant, and render judgment in favor of the defendant;" which motion, over the objection of the appellant, was sustained. Thereupon the court found for the appellee, and rendered judgment on such finding.

In *Engrer* v. *Ohio, etc., R. W. Co.,* 142 Ind. 618, this court,. following *City of Plymouth* v. *Milner,* 117 Ind. 324, held that the proper practice under circumstances such as we are considering, if the defendant thought the plaintiff's evidence made no case against it, was, not to move the court to withdraw the case

from the jury, but to ask that the court direct the jury to return a verdict for the defendant.

But in the Engrer case an examination of the evidence showed that the plaintiff was guilty of contributory negligence and could not, therefore, in any event, recover, so that the error of the court in withdrawing the case from the jury was harmless. Following that ruling it will therefore be necessary, in order to know whether the action of the court in this case was harmless or not, to examine the evidence and see whether it shows negligence on the part of appellee and contributory negligence on the part of appellant.

The evidence shows that after dark, on the evening of the accident, the appellant drove upon the bridge from the north and towards the business center of the city; that when he reached near to the south end of the bridge his horse came against a barricade or obstruction placed across the bridge, and began backing away, turning off or lunging partly to the right, when the left hind wheel of the buggy went over the east side of the bridge, from which the guard rails had been removed or suffered to decay, and the appellant fell out and down upon a rocky bottom, twenty-five or thirty feet below, breaking his leg and causing other injuries; that about two months previous the bridge, which was old and out of repair, had been in part closed to vehicles by placing the obstruction across the south end, leaving a passageway for pedestrians. Whether there had been at any time a guard thrown across the north end of the bridge to prevent or warn travelers from entering there, is left somewhat uncertain by the evidence; but there is no question that at the time of the accident, and for a long time previous, there was no such obstruction to travel across that end of the bridge. That there had at one time been guards at each side of the bridge, but for a

long time they had been in part suffered to fall into decay; and a part of the guard rail on the east side, where the buggy went off, had been removed by the street commissioner to be used as a guard at another point on the street.   There is much conflict in the evidence as to whether there was a light some distance north of the north end of the bridge, and between the bridge and a slough or wash-out that crossed the street at that point, and over which, the evidence seems to show, there was some kind of a plankway or crossing. Several of the witnesses testified that such a light, being a lamp with a red flannel bound around it, was fastened to a post three or four feet high, standing a few feet on the west side of the street and near the wash-out, and, as different witnesses testified, from 8 or 10 to 18 or 20 feet north of the bridge; other witnesses say 8 or 10 feet west of the traveled part of the street and 20 or 30 feet north of the bridge.  Other witnesses say that there was such a lamp, that some nights it was lit and at other times it was not.  Other witnesses, again, who crossed the bridge morning and evening, never saw any light.   Then there was evidence of a heavy growth of weeds about the lamp that almost wholly obstructed the light to one coming on the bridge from the north.   A witness testified that one familiar with the locality would notice the light, but one unacquainted with the place would pass the light without seeing it.   Another witness who crossed the bridge frequently at night said that sometimes you could not see the light at all, and at other times you could; the average height of the weeds around the lamp was four feet, while the height of the lamp, as he testified, was three feet; he crossed the bridge early on the evening of the accident, which was August 29, but saw no light.   A witness who went to the scene of the accident, and who arrived before appellant had

been brought up from the place where he fell, testified that there was nothing to prevent anyone from driving upon the bridge from the north side; he also testified that he saw no light on that occasion. One of the city fire department who had answered the call to go to the help of appellant on the occasion of the accident, found him on the dry rocky bed of the creek where he fell when his buggy tipped over the east edge of the bridge. The distance below was 25 or 30 feet; there was a guard rail for about half-way on that side of the bridge, but none at the place where appellant's wheel went over and he fell from the bridge. This witness saw no light on the bridge or in the vicinity. Appellant himself testified that he drove upon the bridge from the north side; he did not know of any obstruction; the bridge was open, so far as he could see, just the same as it had been the last time he crossed, which was four or five months previous; he saw no light on this occasion; his horse was gentle and under full control. The first warning he had of the obstruction at the south end of the bridge was when his horse stopped and began backing, and the left hind wheel went over the edge on the east side.

It does not seem to us that the contributory negligence of the appellant is so obvious from the evidence, a part of which we have referred to, that the court ought to have directed a verdict against him. We think it was preeminently a case where the question as to the negligence of the city and the contributory negligence of the appellant should have been left to the decision of the jury.

It is true, that where the facts are undisputed, and where only one inference can be reasonably drawn from such facts, the question of negligence may be determined by the court as one purely of law.

But, as said in *City of Franklin* v. *Harter*, 127 Ind.

Stroble *v.* The City of New Albany.

446, "As the question in cases where a municipal corporation is sought to be held liable for injuries caused by a defect in a street is one of negligence, it is seldom that the court can determine the question as one of law, for in by far the greater number of cases the question is a complex one, in which matters of law blend with matters of fact. In all such cases the duty of the court is to instruct the jury as to the law, and that of the jury is to determine whether, under the law as declared by the court, there is actually negligence. Nor does this general rule fail in all cases where the facts are undisputed, since the rule has long been settled in this State that where an inference of negligence may or may not be reasonably drawn from admitted facts, the case is ordinarily for the jury under proper instructions."

The case at bar goes further; for here the facts, not only as to the contributory negligence of the appellant, but also as to the negligence of the appellee city, as detailed in the evidence, are left in dispute. We think the case should not have been taken from the jury.

The judgment is reversed, with instructions to grant a new trial.

Filed January 29, 1896 ; petition for rehearing overruled May 6, 1896.