(7 Misc. Rep. 103.)

## RATTAGLIATA v. HUBBELL.

(Common Pleas of New York City and County, General Term.    February 5, 1894.)

1. NEGLIGENCE—INSUFFICIENT APPLIANCES—EXPRESS WAGONS.

An express company is not obliged to use on its wagons all the appliances generally known and in use to prevent injuries to persons in the street, but only such as reasonable care requires; and whether reasonable care was used is a question for the jury.

2. SAME—INSTRUCTIONS.

In an action for injuries for running over a person in a street, an instruction that, "although the plaintiff may have been negligent at the time he was running across the street, if that was the proximate cause of the injury, and defendant could have avoided it with due care, plaintiff is entitled to recover," was properly refused, because there can be no recovery for an injury the proximate cause of which was an act of the person injured, unless such act was not negligent.

Appeal from trial term.

Action by Julia Rattagliata, as administrator of Thomas Moglia, deceased, against William L. Hubbell, as treasurer of the Adams Express Company. From a judgment entered on a verdict in favor of defendant, and from an order denying a motion for a new trial, plaintiff appeals. Affirmed.

The action is to recover damages for the death of Thomas Moglia, 17 years of age, who was run over and killed by an express wagon of defendant in Water street on April 30, 1888. The complaint charges negligence on the part of the driver of the wagon in driving at an excessive rate of speed, and in governing and directing the wagon and horses, and averred that the plaintiff was free from contributory negligence. The answer denied the allegations of the complaint. The jury found a verdict for defendant.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

Whitehead & Lyon, for appellant.

Seward, Da Costa & Guthrie, for respondent.

DALY, C. J. The testimony shows that the boy ran across the street in front of the approaching wagon, which was coming at an unusual rate of speed, and that he slipped and fell, and was run over. The evidence was conflicting as to how far the horses were from him when he fell, there being some evidence that he fell 25 feet in front of them, and other evidence that he was just close to the pole of the wagon, near the horses' heads, when he fell; and some evidence tending to show that the wagon might have been stopped before passing over him, and some evidence tending to establish the contrary; and there was evidence tending to show that the driver of the wagon, after he first saw deceased, might have avoided the accident, and there was evidence tending to show the contrary. Upon this conflict it was a question for the jury whether the driver of the wagon was negligent, and, if so, whether his negligence was the sole cause of the injury, or whether the deceased was negligent in crossing in front of the wagon while it was approaching at an unusual rate of speed, and, if so, whether his negligence was a proximate cause of the injury; and we cannot disturb the verdict unless it is affected by a misdirection upon the law, or by error in the ruling of the court upon the admission of evidence.

There having been, in the course of the examination of some of the witnesses, inquiry as to the use of brakes upon heavy wagons and of curb bits upon horses, the court charged the jury that there is no law which requires express wagons to have brakes, or requires drivers to use curb bits on horses; and that the general rule is that vehicles shall be used that are safe for ordinary purposes, such as men of common sense habitually use, and such bits shall be used as men of common sense, in their private affairs, usually have; and that there is no greater obligation upon an express company than upon men engaged in any other business. The defendant then asked the court to charge that the company was bound to use every appliance which is generally known and in use for the safety of passage of persons walking upon the street. The court responded: "I will say that they are bound to use such appliances as are com-

monly used by men of common judgment and common prudence in the city of New York." The defendant excepted as far as the request was not charged. There was no evidence that brakes and curb bits were generally used in connection with such vehicles as were operated by defendant, nor generally with vehicles in city streets; but, as they are well-known appliances, appellant claims that, if defendant was not negligent, as matter of law, in not adopting them, the question should have been submitted to the jury. The judge did not exclude from the consideration of the jury the question of the use of the appliances named, but left it to the jury to say if they were commonly used by men of common judgment and common prudence in the city of New York. The question of brakes and curb bits was therefore submitted to the jury under a proper instruction as to the law. for defendant was not bound to do more than common prudence required. The obligation of one using the streets of a city, whether to walk or drive, is the same, viz. the exercise of ordinary care,—such care as a person of ordinary prudence would exercise under the circumstances. The owner of a vehicle is not bound to furnish appliances which will render an accident impossible, or to use the highest degree of care to make it safe, but only such care as a person of ordinary prudence may be expected to exercise under the same circumstances. Unger v. Railroad Co., 51 N. Y. 497. Such, even, is the limit of obligation of a steam-railroad company towards its passengers with respect to its platform structure, (Lafflin v. Railroad Co., 106 N. Y. 136, 12 N. E. 599;) and of a steamboat company with respect to a gangway rail, (Dougan v. Transportation Co., 56 N. Y. 1; Loftus v. Ferry Co., 84 N. Y. 455;) and the owners of a mine with respect to a car used in ascending and descending the mine, (Burke v. Witherbee, 98 N. Y. 562;) and of carriers of passengers with regard to appliances within the cars, i. e. racks to hold parcels, (Morris v. Railroad Co., 106 N. Y. 678, 13 N. E. 455.) In the case last cited the rule of obligation is declared to be reasonable care, to be measured by the circumstances surrounding each case. And it has been held not to be negligence to use a heavy coal wagon which had no stop bar or appliance to prevent its backing down hill. Newcomb v. Van Zile, 34 Hun, 275. It is manifest, therefore, that defendant was not required to use all appliances generally known and in use, but only such as reasonable care required; and this question was submitted to the jury. In the case of Mentz v. Railroad Co., 3 Abb. Dec. 274, where the plaintiff had fallen upon the track of a city railroad, and was run over by the car. Chief Justice Hunt observed:

"Ordinary care is not sufficient under such circumstances. If a human being is seen by the engineer or by the driver lying upon a railroad track, it is his duty to exercise the very highest care, and to make the greatest effort to avoid his destruction. That ordinary care and reasonable diligence which would suffice to protect a bale of goods is far below the standard of duty required on such an occasion. This doctrine is laid down in all the cases as to locomotive trains, and the principle is the same as to horse cars. The care and attention must be in proportion to the damages or injury. The very best means of protection must be furnished by the company to their agents, and the agents must use them in the most skillful and careful manner."

These remarks must be considered with regard to the facts of the particular case, where the driver, engaged in conversation with the passengers, with his back towards the horses, did not see the child which had fallen on the track. There was no question in the case of the use of particular appliances, or the want of them on the car, and it cannot be questioned that the driver in that case failed to exercise even ordinary care. The case does not conflict with the current of decisions.

The court having left the question of deceased's contributory negligence to the jury, the plaintiff asked an instruction "that, although the plaintiff may have been negligent at the time he was running across the street, if that was the proximate cause of his injury, and the defendant could have avoided it with due care, the plaintiff is entitled to recover." The judge said: "That would be a correct statement of a proposition of law if the negligence of the deceased were not proximate. I don't see how it applies to this case. I do not charge it." An act may be a proximate cause of the injury, yet, if it be not negligent, it will not bar a recovery. Putman v. Railroad Co., 47 Hun, 441. But the request called for an instruction which conceded the negligence of the plaintiff as a proximate cause of his injury, and a recovery in such a case would be directly against principle and authority. Negligence on the part of the person injured, when a proximate cause of the injury, is contributory, and fatal to recovery. 4 Amer. & Eng. Enc. Law, tit. "Contributory Negligence."

Error is claimed in submitting any question as to contributory negligence to the jury. No exception was taken to the charge in that respect; but it is urged that, as the plaintiff had ample time to cross the street, but slipped and fell in front of the horses, it was the duty of the judge to charge the jury that deceased was not guilty of any contributory negligence. No such request was made, but the court did expressly instruct the jury upon that point, saying, in speaking of the testimony of one of the witnesses:

"He says that the boy crossed from the westerly side to the easterly side, and that he was coming back to the westerly side at the time his vehicle was approaching. Then he says, in consequence of the slipperiness of the pavement, the boy fell, and, before he could rise and get away, this vehicle came upon him at a rapid pace. If that statement be true, it would appear that the boy was the victim of misfortune; that he fell, which any person is likely to do; and there could not be any negligence attributed to him on his part, if that were true."

This instruction was as favorable as plaintiff could ask. There was testimony that deceased ran almost directly under the nose of the horses, and that he turned or threw himself back, to save himself, and then slipped and fell,—evidence which justified a finding that he attempted to cross when there was not time to do so in safety. Upon the evidence the jury might have found that the injury was due to the negligence of the deceased or was the result of unavoidable accident. Judgment affirmed, with costs. All concur.